**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ESTATE OF GREGORY FOX, Deceased,** **by Janet Lowder, Administrator,** c/o Friedman and Gilbert 55 Public Square, Ste 1055 Cleveland, OH 44113 | Case No.: Judge: |
| Plaintiff, | |
| -vs- | **COMPLAINT** **JURY TRIAL DEMANDED** |
| **CUYAHOGA COUNTY, OHIO,** **INGRID DIMARINO, and** **UNKNOWN CORRECTIONAL** **OFFICERS 1-20,** c/o Cuyahoga County Department of Law 2079 E. 9th Street Cleveland, OH 44115, | |
| Defendants. | |

1.      Gregory Fox, a thirty-six year old man, was a pre-trial detainee at the Cuyahoga County Jail in August 2018. Jail employees failed to provide Gregory with necessary mental health care and medication and failed to take necessary steps to prevent his suicide. As a result, Gregory committed suicide in his cell. This is a civil rights and wrongful death action seeking monetary damages and injunctive relief on behalf of the Estate of Gregory Fox. The correctional officers who ignored Gregory's obvious distress and pleas for help and Defendant Cuyahoga County are liable for Gregory Fox's death and the damages he and his Estate have suffered.

2.      Cuyahoga County Corrections Center (CCCC) is operating under a state of constant crisis, endangering the health and safety of Detainees/Inmates and staff alike on a daily basis. CCCC is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving

rise to a chaotic and perilous environment inside the jail walls. Detainees and Inmates, including Gregory Fox, are subjected to ongoing patterns of unconstitutional and deadly conditions of confinement within CCCC, including violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at CCCC, yet have failed to timely or effectively remedy the deplorable state of affairs.  Defendant Cuyahoga County is also liable for the damages suffered by Gregory Fox and his Estate. Cuyahoga County's unconstitutional policies, practices, and customs in place at the time of this incident are the moving force behind the misconduct committed by Defendant MiMarino and other unknown correctional officers and medical staff.

3.      This is a civil rights and wrongful death action seeking monetary damages and injunctive relief on behalf of the Estate of Gregory Fox.

### JURISDICTION AND VENUE

4.      The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C §1983 et seq; 42 U.S.C. § 12131 (the "Americans with Disabilities Act"); §504 of the Rehabilitation Act of 1973 (§504); 29 U.S.C. § 794; Judicial Code, 28 U.S.C. §§1331 and 1343(a); and the Constitution of the United States.

5.      Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiff's claim also occurred in this judicial district.

## PARTIES

7.     Janet L. Lowder was appointed Administrator of the Estate of Gregory Fox, deceased, by the Probate Division of the Circuit Court of Cuyahoga County, Ohio, Case No. 2019EST244183, on August 21, 2019. Ms. Lowder is an attorney in Cuyahoga County, Ohio.

8.     Defendant Cuyahoga County ("the County") was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant Cuyahoga County is a "person" under 42 U.S.C. § 1983. Defendant Cuyahoga County is the employer and principal of Defendant DiMarino and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center

9.     Defendant Cuyahoga County is responsible for ensuring that all of its facilities, including the Cuyahoga County Correction Center, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

10.     Defendant Cuyahoga County is a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1).

11.     Defendant Correctional Officer Ingrid DiMarino was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Cuyahoga County, acting within the scope of her employment and under the color of state law. She is sued in her individual capacity.

12.     Unknown Defendant Correctional Officers 1-20 was, at all times relevant to the allegations made in this complaint, a duly appointed correctional officer employed by Cuyahoga County, acting within the scope of their employment and under the color of state law. They are sued in their individual capacities.

## FACTS

13.     In August 2018, Gregory Fox was in the custody of the Cuyahoga County Corrections Center (CCCC or "Jail") as a pretrial detainee.

14.     Gregory Fox suffered from depression, and experienced suicidal thoughts. Before entering CCCC custody, he was prescribed and relied upon daily antidepressants.

15.     Upon entry to the Jail, Mr. Fox informed staff of his mental illness, including his previous suicide attempts. He also informed Jail staff that he required psychiatric treatment, including medication.

16.     Upon information and belief, Defendants failed to perform a proper screening, evaluation, assessment, and medical intake of Mr. Fox to evaluate and access his medical and mental health status and the level of supervision required to ensure his safety while in custody.

17.     Jail staff failed to place Mr. Fox on suicide watch and instead assigned him to general population.

18.     All Defendants knew or should have known that Mr. Fox's mental state and mental illness placed him at a high-risk level for suicide.

19.     Gregory Fox was placed into pod 5A in Jail II.

20.     The Jail administration failed to ensure that the appropriate numbers of staff were available to keep all of the inmates, including Mr. Fox, safe.

21.     Unknown Correctional Officers 1-20 came into contact with Gregory Fox during his time in CCCC custody and failed to allow him to access to necessary mental health care or take any steps to keep him safe.

22.     During this period of time, Mr. Fox asked these Defendants for mental health care and medication. He expressed that he was at risk of suicide.

23. Defendants denied Mr. Fox's requests and failed to take any action to express his suicidal ideation.

24. On August 28, 2019, one officer, Defendant DiMarino, was responsible for two pods on her own.

25. The pods were on lockdown due to improper staffing levels.

26. Defendant DiMarino had never before been required to supervise two pods on her own. She was unable to manage all of the demands of both of the pods alone.

27. Defendant DiMarino and unknown correctional officers failed to monitor Mr. Fox on regular intervals.

28. At approximately 4:00 p.m., Defendant DiMarino set up a watchtour of pod 5B in Jail II. She then moved on to a watchtour of pod 5A in Jail II.

29. When she reached Cell 12, she observed that Gregory Fox had hanged himself. He had a sheet around his neck.

30. Defendant DiMarino activated the emergency alarm. Other officers and medical staff arrived.

31. Mr. Fox was transported to MetroHealth. Life-saving attempts failed and Mr. Fox died of his injuries two days later on August 30, 2018.

32. Despite Defendants' knowledge of Gregory Fox's despondency, and his need for mental health care, and risk of injury, they were deliberately indifferent to his risk of suicide.

33. The Defendants failed to offer or procure appropriate intervention and precautions for Gregory's serious, immediate, and life-threatening conditions.

34. Defendants jointly agreed and/or conspired with one another, and others, to complete false, misleading, and incomplete official reports and to give a false, misleading, and

incomplete version of the events to certain superiors and the public in order to cover up their own misconduct and failure to properly monitor Mr. Fox.

35.     All of the actions of the Defendants and their named and unnamed co-conspirators, as set forth above and below, were taken jointly, in concert, and with shared intent.

36.     All Defendants had a duty to care for and protect Mr. Fox while he was in their custody and they failed to do so.

37.     Defendants were deliberately indifferent to protecting Mr. Fox from harm and failed to prevent said harm, further failed to provide urgently needed medical and mental health care. Their conduct was unreasonable in failing to protect Mr. Fox from harm.

38.     Upon information and belief, no correctional officer has been disciplined in any way as a result of the conduct, acts, or omissions described in this Complaint.

39.     As a direct and proximate result of these Defendants' actions, as detailed above, Gregory Fox and his heirs suffered, inter alia, injury, pain, distress, loss of love, affection, society, companionship and consortium as well as other injuries as a result of his death and the continuing loss of his life.

40.     The injuries suffered by Gregory Fox were all preventable had Defendants not engaged in illegal conduct in violation of his fundamental rights.

**Unconstitutional Conditions at the Cuyahoga County Corrections Center**

41.     Defendant Cuyahoga County ("the County") is responsible for the Cuyahoga County Corrections Center (CCCC), including the care and treatment of Detainees/Inmates—like Gregory Fox—in custody therein. The County is required to ensure that the policies, practices, and customs of the CCCC comply with federal and Ohio law concerning the treatment of persons in custody.

42. Unconstitutional and deplorable conditions in the CCCC are a historic problem. Defendants have long been on notice of—and have even taken action to worsen—these conditions, and have long been on notice of the incompetent supervision and management of the CCCC.

43. The CCCC has been subjected to federal court monitoring at least twice in response to unconstitutional conditions of confinement within the jail.

44. The County's track record of operating the CCCC demonstrates continued indifference and longstanding, systematically unconstitutional operational procedures.

45. CCCC today operates in complete crisis. Upon information and belief, at least nine people died in CCCC since 2018, including Gregory Fox, and over 55 people attempted suicide while in CCCC custody in 2018. The rates of in-custody deaths, assaults by correctional officers, deprivations of basic human rights, and safety of Detainees/Inmates and staff alike have all reached emergency levels.

46. After each death, someone confiscated the housing unit logs from the time of the death and replaced them with new logs.

47. Detainees/Inmates and their families have raised innumerable concerns and complaints about deplorable conditions. Some CCCC staff have quit their jobs in protest. Other stakeholders, including judges in the Cleveland Municipal Court and Cuyahoga Common Pleas Court, have expressed serious concern over jail conditions and the manner in which the facility is being operated.

48. As of November 2017, the Ohio Department of Rehabilitation and Corrections' (ODRC) Bureau of Adult Detention inspection found CCCC was not in compliance with Ohio's Minimum Standards for Adult Detention Centers. (ODRC Bureau of Adult Detention Report attached as Exhibit 1.)

49.     Likewise, the Pretrial Justice Institute (PJI) found in 2017 that CCCC was overcrowded. The PJI report found that on average, CCCC has been operating at over 100% capacity for four of the past five years. (*See* Pretrial Justice Institute, "Enhancing Pretrial Justice in Cuyahoga County: Results from a Jail Population Analysis and Judicial Feedback," September 2017, available at https://university.pretrial.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=c4587ef2-8416-18fe-e19d-b188d3691e93&forceDialog=0.)

50.     Further, the Cuyahoga County Bail Task Force found in March 2018 that Inmates/Detainees remain in CCCC custody for unnecessarily long periods of time.

51.     The County has long been on notice of overcrowding and medical and mental health issues—since at least 2017—but has not remedied this critical problem and instead has increased overcrowding.

52.     Further, the United States Marshals Service (USMS) issued a report on November 21, 2018 condemning the conditions in the CCCC. This report documented numerous failings discovered in USMS's thorough review of conditions, policies, and practices at CCCC. The report concluded that conditions in CCCC are inhumane and dangerous for both Inmates/Detainees and corrections officers. (USMS Report attached as Exhibit 2).

53.     The USMS Report found the CCCC deficient in, *inter alia,* mental health screening, provision of mental health services, and training on suicide prevention and identifying signs of suicide.

54.     The USMS report found that CCCC is severely overcrowded and identified 96 corrections officer vacancies, indicating severe understaffing. The report states, "as a result of the high vacancy rate and excessive staff call outs, the CCCCs daily operation is greatly impacted regarding provision for detainees'/inmates' basic needs."

55.    USMS' documentation of deficiencies in mental health care and dangerously low understaffing is consistent with the experience of Gregory Fox.

56.    As evidenced in the USMS report and Plaintiffs' accounts, CCCC is in violation of the Ohio minimum jail standards, as defined in Ohio Admin. Code § 5120:1-8, pertaining to operation of full-service jails in the State of Ohio. Violations Ohio Admin. Code § 5120:1-8 include, but are not limited to:

    a.  Failure to arrange for all levels of health care, including initial screenings upon booking and including ongoing mental health care, and failure to assure quality, accessible, and timely services for inmates;

    b.  Failure to ensure that all health and mental health personnel are appropriately credentialed, with verification of current credentials on file at the facility;

    c.  Failure to provide a daily procedure whereby inmates have an opportunity to report medical and mental health complaints through health-trained personnel, or for urgent matters, to any jail employee, along with failure to provide a grievance system for medical and mental health treatment, where daily complaints and grievances are addressed in a timely manner, recorded and maintained on file, reviewed daily by a qualified health care personnel and treatment or follow-up are provided as necessary;

    d.  Failure to maintain accurate health/mental health records in written or electronic format;

    e.  Failure to immediately refer inmates evidencing signs of mental illness or developmental disability to qualified mental health personnel.

**Former CCCC Official Removed Over Public Statements
about Denial of Detainees'/Inmates' Access to Adequate Medical Care**

57.     Gary Brack, former Director of Ambulatory Care at CCCC, spoke out against the conditions at CCCC at a May 2018 Cuyahoga County Council meeting. Brack blamed former Director of Regional Corrections Kenneth Mills "for meddling in jail healthcare, obstructing the hiring of nurses and creating an unsafe and environment for staff by scaling back security in the jail's medical unit." (*See* Adam Ferrise, "Ex-Cuyahoga County Jail Supervisor Subpoenaed to testify before Grand Jury", *Cleveland.com* (Dec. 10, 2018), available at https://www.cleveland.com/metro/2018/12/ex-cuyahoga-county-jail-medical-supervisor-subpoenaed-to-testify-before-grand-jury.html.)

58.     Rather than launching an investigation into the medical care crisis at the CCCC, or investigating whether Mills was fit to continue in the director position, Defendant Budish removed Gary Brack because Brack was outspoken and critical against Mills.

59.     County spokeswoman Mary Louise Madigan characterized this conflict, noting that "Armond [Budish] did have a meeting at Metro. It was clear that Mr. Brack and the jail director, Ken Mills, didn't work well together, and we asked that he not be returned to his position at the jail." (*See* Courtney Astolfi and Adam Ferrise, "Budish Personally Requested Ouster of County Jail's Medical Supervisor Who Criticized Jail Administration", *Cleveland.com* (Dec. 13, 2018), available at https://www.cleveland.com/metro/2018/12/budish-personally-requested-ouster-of-cuyahoga-county-jails-medical-supervisor-who-criticized-jail-administration-sources-say.html.

**CCC Detainees/Inmates Are Regularly Denied Medical and Mental Health Care**

60.     After Brack's appearance at the May 2018 County Council meeting, at least seven inmates died in Cuyahoga County's custody within a span of barely four months, including inmates likely not receiving proper psychiatric and/or medical care.

61.     Defendant Cuyahoga County provided improperly redacted records concerning the deaths to members of the media. Though the County subsequently provided unredacted records, full records about these deaths have not been released to the media or the public. (*See* Adam Ferrise, "Death of Cuyahoga County Jail inmate subject of criminal investigation: What we know about 7 jail deaths," *Cleveland.com* (Nov. 21, 2018), available at https://www.cleveland.com /expo/news/erry-2018/11/12db721f324418/death-of-cuyahoga-county-jail.html.)

62.     Though County Executive Armond Budish has publicly stated that CCCC is the largest mental health provider in Ohio, upon information and belief, CCCC has not had a staff psychiatrist since April 2018 and only one nurse practitioner administers mental health care 10 hours a day, four days a week. CCCC does not offer any mental health care for the rest of the time.

63.     Lack of adequate staffing of corrections officers further exacerbates the denial of access to medical and mental health care because there are not sufficient corrections officers to escort Detainees/Inmates to and from the medical and mental health units.

64.     In June 2018, a state inspector found that CCCC failed to complete required intake medical assessments within the legally required timeframe.

65.     This delay results in Detainees/Inmates with serious mental health and medical needs being denied proper care and necessary medication and/or treatment when they enter CCCC facilities.

66.     Marcus Harris, former jail nursing director, has also stated that inmates at the Euclid Jail, also run by Defendant Cuyahoga County under regionalization of jail operations, often did not receive the required initial medical assessment upon booking, leaving medical conditions unchecked for days.

67.     In May 2018, Mr. Harris stated that he quit his job at CCCC in January amid inmate safety and ethics concerns. He believes the conditions at CCCC were so unsafe that "every day when [he] went to work [he] had to wonder if someone was going to be dead or assaulted." (*See* Courtney Astolfi, "Inmates deprived of proper medical care under Cuyahoga County jail director, former nursing supervisor says," *Cleveland.com* (May 31, 2018), available at https://www.cleveland.com/metro/index.ssf/2018/05/inmates_deprived_of_proper_med.html.)

68.     Compounding medical and mental health issues, CCCC regularly denies Detainees/Inmates access to necessary hygiene products, including sanitary pads and soap, and access to sufficient cleaning supplies to attempt to keep their own living areas, bedding, and clothing clean and sanitary.

### CCCC Detainees/Inmates with Disabilities Are Regularly Denied Necessary Accommodations

69.     Defendants incarcerate and serve significant numbers of individuals with disabilities as that term is defined in the ADA and the Rehabilitation Act, including those with psychiatric disabilities like Gregory Fox.

70.     Defendants routinely fail to provide Detainees/Inmates with accommodations to ensure equivalent access to programs and services offered at CCCC facilities.

71.     Defendants' failure to accommodate Detainees/Inmates with disabilities not only denies them access to programs and services, but also puts them at risk of injury or victimization by other detainees/inmates and by CCCC staff. Moreover, Defendants' failure to accommodate Detainees/Inmates with disabilities results in the provision of inadequate health care and the violation of detainee/inmates' due process rights.

72.     Defendants fail to maintain proper records and tracking regarding identification of Detainees/Inmates with disabilities and related accommodations. CCCC staff are not adequately

trained in how to identify and track individuals with disabilities, including mental health conditions, nor are they trained regarding the provision of adequate accommodations. As a result, Defendants discriminate against Detainees/Inmates with disabilities by denying them accommodations, access to CCCC programs, services, and activities, and placing them at risk of injury or exploitation, or by withdrawing without justification accommodations that have already been provided.

73.     Defendants do not provide an effective or functional grievance system for Detainees/Inmates with disabilities or a method for Detainees/Inmates with disabilities to mark their grievance as disability-related.

74.     Defendants do not provide Detainees/Inmates with adequate notice of how to request reasonable accommodations for their disabilities. As a result, Detainees/Inmates with disabilities are not informed of any specific process for complaining about disability discrimination or requesting disability accommodations.

75.     Defendants lack adequate policies, procedures, practices, training, and supervision for staff concerning how to respond to Detainees/Inmates with disabilities requesting accommodations through means other than the grievance process.

76.     Defendants place Inmates/Detainees with psychiatric disabilities in isolation and restrictive housing in violation of the ADA.

DAMAGES

77.     As a direct and proximate result of the acts set forth in this complaint, Gregory Fox sustained pain and suffering prior to his death.

78.     As a further direct and proximate result of the wrongful death of Gregory Fox, his survivors and/or heirs and family have suffered damages, including but not limited to, the loss of

his support, services, and society, including lost companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, as well as pecuniary losses.

79.     As a further direct and proximate result of the wrongful death of Gregory Fox, the Decedent's survivors and/or heirs have suffered damages, including but not limited to, grief, depression, and severe emotional distress.

**FIRST CLAIM FOR RELIEF**
**5th and 14th Amendment Due Process Claim-**
**Against Defendants DiMarino and Unknown Correctional Officers 1-20**

80.     All of the foregoing paragraphs are incorporated as though fully set forth here.

81.     Plaintiff alleges an action pursuant to the Fifth and Fourteenth Amendments against Defendants DiMarino.

82.     Gregory Fox, a disabled arrestee, was in a special relationship with the Defendants, within the meaning of the case law interpreting 42 U.S.C. §1983 and Fifth Amendment, which guarantees equal protection of the laws and prohibits any person acting under color of law, from subjecting any person in custody to punitive conditions of confinement without due process of law.

83.     Defendants, acting under color of law, intentionally and with conscious, callous, and unreasonable indifference deprived Mr. Fox of his constitutional rights to due process and equal protection.

84.     The Defendants' above-described conduct, acts and/or omissions constitute deliberate indifference to Mr. Fox's serious medical needs, was unreasonable and violated his rights under the Fifth Amendment and Fourteenth Amendments to the United States Constitution to due process of law and equal protection, and violated 42 U.S.C. §1983.

85.     Defendants' conduct, actions and/or omissions were the direct and proximate cause of the violations of Mr. Fox's Fifth Amendment and Fourteenth Amendment rights, his mental suffering, anguish, and other injuries.

86.     Defendants are jointly and severally liable for this conduct.

### SECOND CLAIM FOR RELIEF
### ADA and §504 Claim –
### Against Defendant Cuyahoga County

87.     All of the foregoing paragraphs are incorporated as though fully set forth here.

88.     Defendant has been, and is, a recipient of federal funds, and is covered by the mandate of Section 504 of the 1973 Rehabilitation Act (29 U.S.C. § 794). Section 504 requires that persons with disabilities be reasonably accommodated in their facilities, program activities, and services and reasonably modify such facilities, services, and programs to accomplish this purpose.

89.     Further, Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) applies to Defendant and has essentially the same mandate as that expressed in §504.

90.     The Cuyahoga County Correctional Center is a facility, and its operation comprises a program and service, for §504 and Title II purposes.

91.     Defendant Cuyahoga County failed and refused to reasonably accommodate Mr. Fox's mental disabilities and to modify their jail facilities, operations, services, accommodations and programs to reasonably accommodate his disability, in violation of Title II of the ADA and/or §504, when he was in their custody.

92.     Defendant's failures cost Mr. Fox his life, and the violations of the ADA and/or §504 are the proximate cause of his death and the resulting damage to his estate.

93.    Plaintiff's estate is entitled to recover for those damages sustained as described in this Complaint as a result of Defendants' violations of the ADA and §504 which caused his death.

94.    Defendants are jointly and severally liable for this conduct.

**THIRD CLAIM FOR RELIEF**
**§ 1983 *Monell* claim-**
**Against Defendant Cuyahoga County**

95.    All of the foregoing paragraphs are incorporated as though fully set forth here.

96.    The actions of Defendants DiMarino and Unknown Correctional Officers 1-20 were taken pursuant to one or more interrelated de facto as well as explicit policies, practices and/or customs of the Defendant Cuyahoga County, agents, and/or officials.

97.    Defendant Cuyahoga County, acting at the levels of official policy, practice, and custom, with deliberate, callous, conscious and unreasonable indifference to Mr. Fox's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint the Defendant Cuyahoga County, the Cuyahoga County Corrections Center, its agents, and/or officials had interrelated de facto policies, practices, and customs which include, inter alia:

a.    failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers, corrections officials and health care providers;

b.    failing to appropriately and timely identify serious mental health medical issues and needs of detainees like Mr. Fox;

c.    failing to appropriately recognize suicidal tendencies in detainees, like Mr. Fox, despite clear indications of such tendencies;

d.    failing to timely refer detainees like Mr. Fox for appropriate mental health medical services, despite clear indications of serious need;

16

e.     failing to place detainees like Mr. Fox on suicide watch even though known to be suicidal;

f.     failing and refusing to adequately and timely communicate critical information regarding mental health, including risk of suicide;

g.     failing and refusing to provide adequate care, treatment and/or supervision for potentially suicidal detainees like Mr. Fox;

h.     failing and refusing to take adequate preventative measures upon discovery of suicidal tendencies of detainees like Mr. Fox;

i.     failing and refusing to correct, discipline, and follow up on deficiencies noted in care, treatment and/or supervision of detainees; and/or

j.     possessing knowledge of deficiencies in the policies, practices, customs and procedures concerning detainees, and approving and/or deliberately turning a blind eye to these deficiencies.

98. In particular, Jail correctional officers, health care providers, and other employees are not properly trained in how to intake, screen, identify, refer and/or handle detainees with mental health issues, including persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of detainees, and to protect detainees in relation to these risk factors.

99. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged, inter alia, the failure to adequately observe detainees to identify problematic behavior and interrupt any suicide attempt, the failure to adequately screen detainees for mental health status and suicidal tendencies and related risks, the failure to provide preventative

health care to avoid suicide, failure to respond appropriately to requests for mental health care and expression of suicidal ideation, and the failure to provide adequate resuscitation equipment and training.

100.   Further, the constitutional violations and damages to Mr. Fox that occurred as described herein were directly and proximately caused by: The unofficial and/or official, tacit and/or expressed policies, customs, and practices; and otherwise unconstitutional policies of authorized policy makers of the Defendants, who deliberately ignored subjecting detainees to unreasonable risk of harm, deliberately ignored violations of appropriate intake and screening procedures, and deliberately failed to supervise and control police officers, correctional officers and health care providers so as to prevent violations of detainees' rights.

101.   Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and, encouraged the Defendants to commit the aforesaid acts against Mr. Fox and therefore acted as direct and proximate causes of said constitutional violations, and resulting injuries.

102.   The foregoing policies, practices, customs and omissions, maintained by Cuyahoga County violated Mr. Fox's rights to due process under the Fourteenth and Fifth Amendments.

#### FOURTH CLAIM FOR RELIEF
### State Law Claim for Negligence - Willful, Wanton and Reckless Conduct against Defendants DiMarino and Unknown Correctional Officers 1-20

103.   All of the foregoing paragraphs are incorporated as though fully set forth here.

104.   Defendant Correctional Officers acted negligently when they violated their duty to exercise due care for Gregory Fox.

105.    Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as correctional officers at the CCCC.

106.    Defendants' misconduct directly and proximately caused the injuries and damages suffered by Gregory Fox as described above.

107.    Defendants are jointly and severally liable for this conduct.

**FIFTH CLAIM FOR RELIEF**
**State Law Claim for Wrongful Death Pursuant to Ohio R.C. § 2125.02**

108.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

109.    Gregory Fox is survived by his heirs who have suffered and will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, financial and other support, companionship, guidance and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved one, and otherwise suffered damages to their detriment.

110.    The wrongful death of Mr. Fox was proximately caused by the neglect, default, and/or willful, wanton, and/or reckless conduct of the Defendants.

111.    The Defendant officers otherwise acted negligently, intentionally, and with malice and willful, wanton, and/or reckless indifference in committing the acts alleged in this complaint, which resulted in the injuries and wrongful death of Gregory Fox and his Estate.

112.    As a direct and proximate result of the actions of the defendants in this complaint, Mr. Fox died on August 30, 2019, subjecting the defendants to liability pursuant to Ohio R.C. § 2125.02.

### SIXTH CLAIM FOR RELIEF
**Survivorship Action**

113.     All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

114.     Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, Gregory Fox was caused to suffer mental anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

115.     The Defendant officers owed Mr. Fox a duty of care, they breached that duty, and their breach of duty was the proximate cause of Mr. Fox's death.

116.     The Plaintiff brings this survivor action pursuant to Ohio Revised Code § 2305.21.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that judgement be entered in her favor on all counts and prays the Court award the following relief:

A.     Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Plaintiff's decedent's rights and his wrongful death;

B.     Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C.     Declaratory and injunctive relief against Cuyahoga County enjoining unlawful policies, practices, and customs and ordering the institution of policies, procedures, and training for the Cuyahoga County Correctional Center to bring them into compliance with constitutional standards;

D.     Attorneys' fees and the costs of this action pursuant to law; and

E.     All other relief which this Honorable Court deems equitable and just.

**A JURY IS REQUESTED TO HEAR THIS MATTER**

*/s/ Sarah Gelsomino*
SARAH GELSOMINO (0084340)
JACQUELINE GREENE (0092733)
TERRY GILBERT (0021948)
MARCUS SIDOTI (0077476)
FRIEDMAN & GILBERT
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
T: (216) 241-1430
F: (216) 621-0427
sgelsomino@f-glaw.com
jgreene@f-glaw.com
tgilbert@f-glaw.com
marcus@jordansidoti.com

*Counsel for Plaintiff*